## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL ASSOCIATION OF FORENSIC
COUNSELORS, INC., a Nevada Non-Profit
Corporation; AMERICAN ACADEMY OF
CERTIFIED FORENSIC COUNSELORS,
INC., d/b/a AMERICAN COLLEGE OF
CERTIFIED FORENSIC COUNSELORS, a
Nevada For-Profit Corporation,

      Plaintiffs,

    v.

NARCONON INTERNATIONAL, a
California Non-Profit Corporation;
NARCONON OF OKLAHOMA, INC. d/b/a
NARCONON ARROWHEAD, d/b/a
ADVANCE DETOX, d/b/a ARROWHEAD
MEDICAL DETOX, d/b/a NARCONON
CHILOCCO NEW LIFE CENTER, an
Oklahoma Non-Profit Corporation; PITA
GROUP, INC., an Oklahoma Non-Profit
Corporation; ASSOCIATION FOR BETTER
LIVING AND EDUCATION
INTERNATIONAL, a California Non-Profit
Corporation;  GARY W. SMITH, a citizen of
Oklahoma; DERRY HALLMARK, a citizen
of Oklahoma; REBECCA POOL, a citizen of
Massachusetts; JANET WATKINS, a citizen
of Oklahoma; TOM WIDMAN, a citizen of
Oklahoma; VICKI SMITH, a citizen of
Oklahoma; MICHAEL OTTO, a citizen of
Oklahoma; MICHAEL J. GOSSELIN, a
citizen of Oklahoma; KATHY GOSSELIN, a
citizen of Oklahoma; MICHAEL GEORGE, a
citizen of Oklahoma; KENT MCGREGOR, a
citizen of Oklahoma; JAMES
MCLAUGHLIN, a citizen of Texas; ROBERT
"BOBBY" NEWMAN, a citizen of Hawaii;
JASON BURDGE, a citizen of Michigan;
DENA G. GOAD,a.k.a. DENA G. BOMAN, a
citizen of Oklahoma; D. ERIC MITCHELL, a
citizen of Arkansas; MICHAEL ST. AMAND,
a citizen of Oklahoma,

      Defendants.

Case No. 14-cv-00187-RAW
(action pending in the Eastern District
of  Oklahoma)

NARCONON OF OKLAHOMA, INC., 69
Canadian Drive, Arrowhead, OK 74425,
GARY SMITH, 69 Canadian Loop,
Arrowhead, OK 74425, REBECCA POOL,
P.O. Box 334, Canadian, OK 74425,
and MICHAEL St. AMAND, 274 Holiday
Hills Road, Eufaula, OK 74425,

              Movants-Defendants,

v.

INSTITUTE FOR CREDENTIALING
EXCELLENCE, an unincorporated
association, 2025 M Street, NW, Suite 800,
Washington, DC 20036,

              Respondent.[1]

Misc. No. _____

## DEFENDANTS' MOTION TO COMPEL COMPLIANCE OF NON-PARTY INSTITUTE FOR CREDENTIALING EXCELLENCE WITH SUBPOENA PURSUANT TO FED. R. CIV. P. 45

---

[1] The primary caption includes the names of the plaintiffs and the remaining twenty-one defendants of the 82 defendants originally named in the Complaint in the Eastern District of Oklahoma action.  The secondary caption includes the names and addresses of the four moving defendants here and the non-party that is the subject of this Motion to compel compliance with the Rule 45 subpoena.

Movants here, Narconon of Oklahoma, Inc., Gary Smith, Rebecca Pool, Michael St. Amand, are among the Defendants in the above-captioned action pending in the Eastern District of Oklahoma.  By this motion, these moving Defendants ("Defendants") seek to compel compliance with a subpoena for testimony and documents served upon non-party Institute for Credentialing Excellence ("ICE"), an unincorporated association located in the District of Columbia, which offers accreditation services to certification programs through its arm, the National Commission for Certifying Agencies ("NCCA").  In support of this motion to compel, Defendants state as follows:

## I.    INTRODUCTION

Plaintiffs National Association of Forensic Counselors ("NAFC") and American Association of Certified Forensic Counselors ("AACFC") claim certification mark rights in unregistered counseling certifications they offer, and allege that those certifications are valuable because they were accredited by NCCA (ICE's accreditation arm), which is the subject of the Fed. R. Civ. P. 45 subpoena before this Court.[2]  Naturally, Defendants sought communications between Plaintiffs and NCCA regarding the certifications in question.  Plaintiffs have been unable and unwilling to produce all their communications with NCCA:  Plaintiffs claim that many of their NCCA-related documents were destroyed in 2012, and they refuse to produce others – even after the Oklahoma court in which this case is pending granted Defendants' motion to compel such communications.  Accordingly, Defendants had to subpoena NCCA directly for testimony and documents regarding such communications.  Surprisingly, NCCA is also stonewalling, objecting to the subpoena on the grounds that its communications with Plaintiffs are irrelevant to the underlying action and are confidential, despite the existence of a strong Protective Order.

NCCA's objections fail.  The Oklahoma court has already determined that communications between Plaintiffs and NCCA are relevant, and for good reason:  Plaintiffs

---

[2] For convenience, the Defendants refer to the subpoenaed party as "NCCA."

allege that they have suffered tens of millions of dollars in damages to their certifications, but the sole factual basis they allege for their certifications having *any* value is that the certifications were accredited by NCCA, thus putting into issue the representations Plaintiffs made to NCCA in the accreditation process. Plaintiffs' Rule 30(b)(6) representative testified that Plaintiffs likely withheld critical information from NCCA that would have prevented Plaintiffs from obtaining the accreditations – and would have eliminated any value in their certifications. Likewise, neither NCCA nor Plaintiffs have offered any support for their "confidentiality" argument, particularly in light of the Protective Order in place in the underlying case to address this precise concern. NCCA's remaining arguments are a hodgepodge of boilerplate objections, all of which lack merit.

The court hearing this case has already ordered that communications between Plaintiffs and NCCA are relevant and discoverable. This Court should do the same, and order NCCA to comply with the properly-served subpoena for documents and testimony.

## II.   FACTS AND PROCEDURAL BACKGROUND

### A.   Nature of the Case

In the underlying action pending in the United States District Court for the Eastern District of Oklahoma, NAFC and AACFC allege that they hold protectable certification mark rights in several of their addiction counseling certifications, specifically relevant here the Certified Chemical Dependency Counselor ("CCDC") certification and the Master Addictions Counselor ("MAC") certification. (Ellis Decl. Ex. A), ¶¶ 88-90.) Plaintiffs allege that AACFC develops the standards for the certifications at issue. (*Id.* ¶ 93.) Plaintiffs allege that defendants infringed on their purported rights by advertising themselves as holding Plaintiffs' certifications after the certifications expired or were revoked, or by advertising that their Narconon drug treatment facilities were staffed by certified chemical dependency counselors. (*Id.* at 19-42.)

Plaintiffs allege that the value of their certifications has been damaged by Defendants' misconduct in the amount of tens of millions of dollars. (Ellis Decl. Ex. B (Plaintiffs' Supplemental Rule 26 Disclosures).) However, Plaintiffs have offered precious little to support

the proposition that their certifications are valuable.  As a basis for establishing that their

certifications have value in the relevant market, Plaintiffs allege as follows:

> The Certifications of MAC, C.C.D.C and CFAS [a certification no longer at issue
> in this case] have been nationally accredited through the National Commission for
> Certifying Agencies ("NCCA"), which increased the professional and marketable
> value of the Certifications.

(Ellis Decl. Ex. A, ¶ 91.)  Tellingly, Plaintiffs do not allege any other basis for their certifications

having any value or recognition in the relevant market.  (*Id.*)

**B.**    **Plaintiffs Likely Concealed Information from NCCA in the Accreditation
Process – Just as They Concealed Information From Other Third Parties**

Discovery has revealed that in order to obtain accreditation from NCCA, Plaintiffs

concealed information that would have been fatal to that accreditation.  During the first session

of AACFC's Rule 30(b)(6) deposition, its chairperson, Karla Taylor, testified that AACFC was

formed because the NCCA's accreditation standards required that a completely autonomous

entity from NAFC had to be created to develop the certifications, without any influence from

NAFC's board of directors.  (Ellis Decl. Ex. C 81:6-82:8.)  However, Taylor admitted that

several of AACFC's commissioners were simultaneously members of NAFC's board – and that

she never informed NCCA of this fact.  (*Id.* 100:22-102:16.)

This concealment is of a piece with Plaintiffs' concealment of relevant – but damaging –

information from other professional organizations.  During NAFC's Rule 30(b)(6) deposition,

Taylor was presented with a number of documents exchanged between her and NAADAC and

NBCC -- two national professional organizations that had accredited the NAFC annual

conference for continuing education hours in the past, but which disassociated with NAFC in

2015 and 2016.  For example, in July 2015, NBCC rejected NAFC as a continuing education

provider, because of NAFC's misrepresentations of NBCC approval, its misuse of the NBCC

name, and its failure to follow through on NBCC's corrective demands.  (Ellis Decl. Ex. D.)

Taylor was also shown a letter from NAADAC of January 1, 2016, denying NAFC as a

continuing education provider because NAFC's business practices did not meet NAADAC's

standards.  (Ellis Decl. Ex. E.)  NAADAC also expressed concern with Plaintiffs once the

extensive violent felony history – including rape of a minor and armed robbery – of their founder, Frank Deisler, was re-publicized. Taylor informed NAADAC that by August 2015, Frank Deisler "is in no way associated with [NAFC's] operations." (Ellis Decl. Ex. F.) This was not true: Taylor concealed from NAADAC that Deisler was still the chairman of AACFC at the time. When asked why she concealed this information from NAADAC, Taylor testified, "They didn't ask." (Ellis Decl. Ex. G 246:12; *see also id.* 246:1-:18.)

### C. Plaintiffs Refuse to Produce Documents Regarding NCCA, Despite Court Orders

Defendant Narconon of Oklahoma served its first document requests on NAFC in this case on December 9, 2015. (Ellis Decl. Ex. H.) Narconon of Oklahoma requested documents reflecting NCCA's accreditations of the certifications at issue in this case. (*Id.* at 16, Req. No. 18). NAFC refused to produce the documents, and after meeting and conferring, Narconon of Oklahoma moved to compel production of documents responsive to numerous requests, including Request No. 18. Via order dated July 26, 2016, the Oklahoma Court granted the motion in its entirety. (Ellis Decl. Ex. I.)

Despite the Oklahoma Court's orders, Plaintiffs have not produced all of their communications with NCCA, simultaneously arguing that they lack such information *and* that they need not produce information. For example, in the second session of AACFC's Rule 30(b)(6) deposition, Taylor claimed that she did not know if AACFC still had a copy of the NCCA accreditation standards that were in place when Plaintiffs were accredited – but that even if they did, Plaintiffs would refuse to produce the standards on confidentiality grounds. (Ellis Decl. Ex. J 485:11-19, 478:1-479:3.) Notably, this August 16 deposition took place after the Oklahoma Court's production order.

Similarly, NAFC has failed to produce its original application for NCCA accreditation. Taylor testified that the application packet was kept only in hardcopy form and was destroyed in a 2012 sewage flood in NAFC's offices – but that Plaintiffs would refuse to produce the

documents even if they had not been destroyed. (*Id.* 487:11-24, 490:3-491:17.)[3]

Indeed, throughout the case, Plaintiffs have claimed that vast numbers of documents were destroyed in the sewage flood in their offices. (*See, e.g.,* Ellis Decl. Ex. J 417:18-23; Ex. K 500:14-18; Ex. G 81:20-83:22.)  And just as they admit that their application packet to NCCA was lost, Plaintiffs assert that they have no idea just how many documents were lost in the 2012 sewage flood:

> Q.      And – sitting here today, you don't know one way or another what types
> of documents were destroyed in the sewage flood in 2012, correct?
>
> A.      That is correct.  There were a lot.

(Ellis Decl., Ex. C 127:21-24.)

### D.      The Present Subpoena and NCCA's Refusal To Comply

In light of Plaintiffs' allegations about NCCA and the alleged value its accreditation lends to the certification marks at issue, Defendants subpoenaed NCCA (through its parent, the Institute for Credentialing Excellence) directly.  The subpoena at issue before this Court seeks documents and testimony, and was personally served on July 20, 2016.  (Ellis Decl. Ex. L.)

NCCA served objections to the subpoena on July 28, 2016, refusing to produce any witness to testify on the topics set forth in the subpoena.  (Ellis Decl. Ex. M.)  NCCA's objections did not address the document requests in the subpoena, incorrectly asserting, "The current Subpoena is for testimony only."  (*Id.*)[4]

In light of NCCA's refusal to comply with the subpoena, counsel for Defendants met and conferred with counsel for NCCA via letter of August 12, 2016, and telephone call on August

---

[3] A particularly egregious example of Plaintiffs' stonewalling with respect to their contacts with NCCA occurred during the first session of AACFC's Rule 30(b)(6) deposition.  There, encouraged by her counsel, Taylor refused over the course of eight pages of deposition transcript to answer whether NAFC's bylaws were ever submitted to NCCA – before she finally claimed not to know.  (Ellis Decl. Ex. C 84:19-92:14.)

[4] NCCA's subpoena objections purported to incorporate their objections to an earlier documents-only subpoena, which objections were served on March 21, 2016.  (Ellis Decl. Ex. M at 1, *see also* Ex. N.)  NCCA's objections to the document requests fail, as discussed in Section IV.C, *infra.*

24, 2016.  (Ellis Decl. ¶ & Ex. O.)  During the meet and confer call, NCCA's counsel maintained that the information sought in the subpoena was irrelevant to the Oklahoma case, and that, at most, NCCA would consider offering testimony only as to its general standards for accreditation, but that it would not offer any testimony specific to Plaintiffs.  (Ellis Decl. ¶ 17.)  This motion followed.

## III.   LEGAL STANDARD

The Federal Rules of Civil Procedure permit broad access to relevant information in discovery.  "Generally speaking, 'relevance' for discovery purposes is broadly construed." *Jewish War Veterans of the United States of America, Inc. v. Gates*, 506 F. Supp. 2d 30, 41 (D.D.C. 2007) (granting in part and denying in part motion to compel response to subpoena served on third party) (quoting *Food Lion v. Untited Food & Commer. Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997)).  Information is relevant for discovery purposes "if such information will have some probable effect on the organization and presentation of the moving party's case."  *Smith v. Schlesinger*, 513 F.2d 462, 473 (D.C. Cir. 1975).

The party moving to compel bears the initial burden of explaining how the requested information is relevant.  *Jewish War Veterans*, 506 F. Supp. 2d at 42.  Once that showing is made, the burden shifts to the objecting party to explain why discovery should not be permitted. *Id.*  "Moreover, the general policy favoring broad discovery is particularly applicable where, as here, the court making the relevance determination has jurisdiction only over the discovery dispute, and hence has less familiarity with the intricacies of the governing substantive law than does the court overseeing the underlying litigation."  *Id., citing Flanagan v. Wyndham Int'l, Inc.*, 231 F.R.D. 98, 103 (D.D.C. 2005).  In such cases, doubts regarding relevance should be resolved in favor of permissive discovery.  *Id., citing Flanagan*, 231 F.R.D. at 103.

## IV.   ARGUMENT

### A.   Communications Between NCCA and NAFC are Relevant, as the Oklahoma Court Has Already Ruled

NCCA objected to the entire subpoena, and specifically to deposition topic Nos. 1, 2, 5,

6

6, 11, 12, 13 and 14 (addressing the development of NCCA's accreditation standards; the history of NCCA's accreditation of NAFC's certifications; the value of NCCA accreditations; the amount of money NAFC paid in connection with its accreditations; any violations by NAFC of NCCA's accreditation standards; actions that can be taken against an entity if it violates NCCA's standards; whether NCCA has investigated NAFC for violation of its accreditation standards and the result of such investigations; and NCCA's efforts to locate responsive documents) on the basis of relevance.

As noted above, the Oklahoma Court has already addressed the issue of communications between NAFC and NCCA, granting Narconon of Oklahoma's motion to compel and ordering NAFC to produce its communications with NCCA.  In reaching this conclusion, the Oklahoma Court necessarily concluded that such communications were relevant.

The Oklahoma Court's order was correct as a matter of law, because NAFC's allegations place its accreditations from NCCA front and center in its case.  NAFC alleges that its "certified chemical dependency counselor" and "master addictions counselor" certifications have substantial professional and marketing value in the addictions counseling field, but identifies *only* their accreditations by NCCA as the factual basis for such value.  (Ellis Decl. Ex. A ¶ 91.) Discovery has also indicated that NAFC withheld critical information from NCCA in obtaining those certifications – just as it lied to two other national boards (NAADAC and NBCC) about its business practices and about Plaintiffs' continuing association with their founder, a multiple felon who lied on state licensing applications.  Accordingly, the content and truthfulness of information NAFC provided to NCCA, the value of accreditations provided by NCCA in the addictions field, and whether NAFC actually complied with NCCA's standards (as well as documents reflecting those issues), are all relevant to the case.  Simply put, if Plaintiffs lied to NCCA in order to obtain their certifications (as Taylor's testimony indicates) then the certifications at issue have *no* actual value, and Plaintiffs' eight-figure damages claim collapses.

**B.  NCCA's Remaining Objections Fail.**

Although NCCA did not discuss any of its other written objections in the pre-motion

meet and confer call, Defendants nevertheless address them here.

Initially, all of NCCA's written objections are in boilerplate form, without detail or evidentiary support. "When faced with general objections, the applicability of which to specific document requests is not explained further, '[t]his Court will not raise objections for [the responding party],' but instead will 'overrule[ ] [the responding party's] objection[s] on those grounds.'" *Convertino v. U.S. Dep't of Justice*, 565 F. Supp. 2d 10, 12 (D.D.C. 2008) (quoting *D.L. v. District of Columbia*, 2008 WL 2555101, at *2 (D.D.C. June 27, 2008) and *Tequila Centinela, S.A. de C.V. v. Bacardi & Co., Ltd.*, 242 F.R.D. 1, 12 (D.D.C.2007)). The Court can thus reject all of NCCA's objections outright.

NCCA generally objected to the subpoena, and to deposition topic Nos. 3, 4, 7, 8, 9, 10 and 13 (addressing NAFC's accreditation application and supporting materials sent to NCCA; financial statements submitted by NAFC; communications between NAFC and NCCA concerning accreditation and renewals; any requests by NCCA to NAFC for additional information in connection with accreditation or renewals; and whether NCCA actually investigated NAFC for violation of its accreditation standards and the result of such investigations), on the basis that such topics improperly sought confidential information. (Ellis Decl. Ex. M at 2-3, 5-6.) NCCA, just like NAFC before it, argues that its policies prevent the disclosure of communications between itself and the entities it accredits. NCCA has yet to produce any documents evidencing this policy. Regardless of its failure to support this objection, the confidentiality argument fails. A protective order has been entered in the Oklahoma case, and NCCA can thus designate documents or deposition testimony it believes to be confidential. *See* Ellis Decl Ex. P.

NCCA also generally objected on the basis of attorney-client and work product privilege (Ellis Decl. Ex. M at 2), but those objections are unavailing. With respect to documents, NCCA is free to prepare and produce a privilege log for privileged documents – but it has failed to do so as of now. As for testimony, none of the deposition topics by their terms ask for communications between NCCA and its counsel, and NCCA can assert the privilege on a

question-by-question basis at the deposition if it believes a specific question seeks information relating to attorney-client communications.

NCCA's general objections relating to the propriety of the notice of subpoena and the purported insufficient period of time between the service of the subpoena and the compliance date (Ellis Decl. Ex. M at 1-2) also fail.  Narconon of Oklahoma properly served notice of the subpoena, and the subpoena was served eleven days before the date NCCA was to appear for deposition, which was a sufficient notice period.  (*See* Exs. M, Q.)

Next, NCCA generally objected to the subpoena on the ground that it improperly "seeks testimony about . . . private, non-public deliberations by and among the Commissioners and staff of NCCA."  (Ellis Decl. Ex. M at 3.)  Read charitably, it appears that by this objection, NCCA seeks to invoke the so-called "deliberative process privilege."  However, that privilege is applicable only to government agencies.  *See, e.g., Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 2 (2001) (deliberative process privilege "covers documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which *Government decisions and policies* are formulated.") (emphasis added).  NCCA, as a private organization, cannot rely on this ground to avoid testifying or producing relevant, responsive documents.

Finally, NCCA's general objection that the information sought could be produced by NAFC (Ellis Decl. Ex. M at 3-4) fails.  Defendants have only been able to obtain complete productions of Plaintiffs' communications with other third parties (such as NAADAC and NBCC) by subpoenaing those entities directly.  The same is true as to NCCA.  Plaintiffs' production of NCCA-related documents is incomplete, and NAFC's own testimony demonstrates that NCCA itself is the only remaining source for critical documents.  NAFC admits that its copy of its accreditation application to NCCA was destroyed in a sewage flood.  It purports not to know what additional categories of documents were destroyed in that flood.  And NAFC continues to refuse to produce its annual reports to NCCA and the accreditation standards pertinent to its certifications.  Nor is there any requirement that Defendants are limited *only* to

seeking these documents and communications from NAFC.  NCCA's own records are relevant,

as they may corroborate – or more likely, given NAFC's history of lying to third parties,

*contradict* – NAFC's version of events.  Moreover, those few documents that NAFC has

produced indicate that oral communications took place between NAFC and NCCA in connection

with the former's annual reports.  (*See, e.g.,* Ellis Decl. Ex. R (NAFC-AACFC 28984-86).)

Defendants are thus entitled to discover NCCA's testimony as to what it was told in those

discussions.  NAFC's admitted loss of documents evidencing its communications with NCCA,

and its continued refusal to fully comply with the Oklahoma court's orders compelling

production of its communications with NCCA, leave Defendants with no choice but to seek the

relevant information directly from NCCA.  *See, e.g., Soto v. Castlerock Farming and Transport,*

*Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) (granting motion to compel compliance with

subpoena to third party where, as here, subpoenaing party sought same information from adverse

party who refused to provide information).

> **C.     NCCA Has Waived Its Objections to Document Requests.**

"[T]he failure to serve written objections to a subpoena within the time frame specified

by Rule 45(c)(2)(B) typically constitutes a waiver of such objections." *Alexander v. F.B.I.*, 186

F.R.D. 21, 34 (D.D.C. 1998) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44,

48 (S.D.N.Y. 1996)).  As noted above, NCCA failed to provide specific objections to any of the

document requests, claiming – wrongly – that the subpoena sought only testimony.  As a result,

NCCA cannot object to the document requests now, and must provide complete responses.

Even if the Court were to indulge NCCA in its attempt to incorporate its earlier March

2016 response to Defendants' documents-only subpoena, those responses were deficient and

evasive.  In its March response, NCCA objected to all the document requests on the same

boilerplate grounds, claiming they were "Irrelevant, vague and ambiguous, overly broad and

unduly burdensome." (Ellis Decl. Ex. N.)  As explained above, boilerplate objections, without

more, are improper.  Moreover, the communications between NCCA and NAFC are relevant,

and producing documents reflecting those communications is not unduly burdensome,

particularly where NCCA has not offered any support for its burden assertion and there is no other source for the documents given Plaintiffs' continued stonewalling. Nor does NCCA's vagueness objection hold any water, as it was able to determine that it lacked responsive documents as to three of the six document categories. (*Id.* at 5-6, Resps. to Request Nos. 2, 4, and 6.)

NCCA's past responses to the remaining requests are deliberately evasive. Request No. 5 seeks documents reflecting NCCA's accreditation of MAC programs *besides* that offered by NAFC, and in response NCCA simply points to its website. (*Id.* at 5-6.) But the value of NAFC's MAC certification is lessened by the fact that other entities used and received accreditation for the same certification. Defendants are thus entitled to know if any other MAC-offering entities were informed of NAFC's program, or vice-versa. In response to Request No. 1 (which seeks certain documents reflecting NCCA's accreditation of NAFC's certifications) and Request No. 3 (which seeks documents reflecting a subgroup of communications between NCCA and NAFC relating to the MAC, CCDC and BAC certifications), NAFC claimed only that it had no responsive documents *with respect to the BAC certification.* (*Id.* at 5.) But Plaintiffs never alleged that NCCA accredited the BAC program, and NCCA thus deliberately tailored its response potentially to conceal the documents relating to the accreditations it *did* provide NAFC. Complete responses are required.

## V.   CONCLUSION

Both Plaintiffs and NCCA have stonewalled about their communications regarding the one specific fact that Plaintiffs allege as bestowing independent value on the certifications at the heart of this case. NCCA has done so via meritless objections – despite having evidence that it was lied to when it accredited NAFC's certifications. Defendants are entitled to know how NCCA accredited NAFC's certifications, what it was told in that process, and whether NAFC concealed relevant information or made false statements in that process. The Court should grant Defendants' motion and enforce the subpoena.

Dated:  October 5, 2016

David B. Goldstein
<u>D.D.C. Bar # NY0034</u>
RABINOWITZ, BOUDIN, STANDARD,
KRINSKY & LIEBERMAN, P.C.
61 Broadway, 18th floor
New York, NY 10006-2708
(212) 254-1111 – Telephone
(212) 674-4614 – Facsimile
dgoldstein@rbskl.com

*Attorneys for Moving Defendants* Narconon of
Oklahoma, Inc., Gary Smith, Rebecca Pool,
and Michael St. Amand

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October, 2016, I served the foregoing documents by United Sates Express Mail, postage prepaid upon:

David R. Keesling
**KEESLING LAW GROUP, PLLC**
11114 S. Yale Ave.
Tulsa, Ok  74137
*Attorneys for Plaintiffs* in
Case No. 14-cv-00187-RAW (E.D.OK.)

I further certify that service of the foregoing documents is to be made by hand service upon Respondent Institute for Credentialing Excellence at 2025 M Street, NW, Suite 800, Washington, DC 20036.

Dated:  October 5, 2016

David B. Goldstein
D.D.C. Bar # NY0034